UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:  BILLY MONDRAGON and                                            No. 7-06-10665 MR
        JOAN MONDRAGON,

        Debtors.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(3) with Supporting Authority ("Motion to Dismiss).[1] The Court held a final hearing on the Motion to Dismiss on May 30, 2007 and took the matter under advisement. The parties filed a stipulation of facts prior to the final hearing.[2] Upon review of the stipulated facts and the evidence presented at trial in light of the appropriate standards for dismissal under 11 U.S.C. § 707(b)(3)[3], the Court finds that the Motion to Dismiss should be granted.

DISCUSSION

Section 707(b)(3) was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and provides for dismissal of a debtor's Chapter 7 proceeding where the debts are primarily consumer debts upon a finding of "abuse." 11 U.S.C.

---

[1]The United States Trustee also filed a motion to dismiss the Debtor's bankruptcy proceeding under 11 U.S.C. § 707(b)(1) based on a presumption of abuse arising under 11 U.S.C. § 707(b)(2), which was later withdrawn by stipulation. (*See* Docket # 17 and Docket # 34).

[2]*See* Statement of Stipulated Facts for United States Trustee's Motions to Dismiss Pursuant to 11 U.S.C. §§ 707(b)(2) and 707(b)(3) ("Stipulated Facts"). (Docket # 31). The Court will make reference to certain of the Stipulated Facts in this Memorandum Opinion, and incorporates them in their entirety by reference herein.

[3]All future statutory references are to Title 11 of the United States Code unless otherwise identified.

§ 707(b)(3). Unlike its pre-BAPCPA predecessor, §707(b)(3) does not require a showing of "substantial abuse," but a lower standard of "abuse." *See In re Mestemaker,* 359 B.R. 849, 856 (Bankr.N.D.Ohio 2007) (emphasizing that "Congress has clearly lowered the standard for dismissal in changing the test from 'substantial abuse' to 'abuse.'"). However, § 707(b)(3) incorporates a "totality of the circumstances" standard, which courts previously employed as the standard for determining whether to dismiss a debtor's chapter 7 proceeding based on "substantial abuse" under pre-BAPCPA § 707(b)(2). Thus, pre-BAPCPA cases which consider whether a case should be dismissed for substantial abuse remain instructive in an analysis under § 707(b)(3).[4] Section 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider --

---

[4]*See In re Colgate,* __ B.R. __, 2007 WL 1649103, *5 (Bankr.E.D.N.Y. 2007) (acknowledging that BAPCPA lowered the standard from "substantial abuse" to "abuse" but finding it appropriate to apply the pre-BAPCPA two part test for determining substantial abuse in evaluating a motion to dismiss under § 707(b)(3)); *In re dePellegrini,* 365 B.R. 830, 832 (Bankr.S.D.Ohio 2007) (finding that pre-BAPCPA cases are still instructive under § 707(b)(3)); *In re Pfiefer,* 365 B.R. 187, 191 (Bankr.D.Mont. 2007) ("Because Congress retained the phrase 'totality of the circumstances' in BAPCPA, the Court concludes that it may look to pre-BAPCPA case law to construe the meaning of that phrase under § 707(b)(3)."); *In re Schoen,* 2007 WL 643295, *2 (Bankr.D.Kan. 2007) (noting that "[t]he use of the phrase 'totality of the circumstances' [in § 707(b)(3)] suggests that Congress intended to incorporate in to subsection (b)(3)(B) the test applied by courts like the Tenth Circuit" to "substantial abuse" cases). *But compare, In re Henebury,* 361 B.R. 595, 606-607 (Bankr.S.D.Fla. 2007) (finding that, because pre-BAPCPA cases applying a "totality of circumstances" standard for substantial abuse consider ability to pay conjunctively with bad faith, while § 707(b)(3) separates the "bad faith prong" from the "totality of circumstances" prong, pre-BAPCPA cases finding that "totality of circumstances" requires something more than an ability to pay do not provide guidance to post-BAPCPA cases under the "totality of circumstances" prong, and holding that "ability to pay, standing alone, is sufficient to warrant dismissal of a Chapter 7 case for abuse pursuant to 11 U.S.C. § 707(b)(3)(B).").

2

> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

The parties stipulated that the Debtors filed their petition in good faith; therefore, the Court need only consider whether dismissal is appropriate under the "totality of the circumstances" prong found in § 707(b)(3)(B). (Stipulation of Facts #49).

In the Tenth Circuit, the following factors are relevant to a "totality of the circumstances" analysis for dismissal under the pre-BAPCPA "substantial abuse" standard: (1) the debtor's ability to repay his or her debts; (2) whether the debtor has a stable source of future income; (3) whether the debtor's expenses can be reduced without depriving the debtor of adequate food, clothing, shelter and other necessities; (4) whether the debtor has suffered a sudden illness or calamity; (5) whether the debtor has obtained cash advances and consumer purchases far in excess of the debtor's ability to repay; (6) whether the debtor has excessive expenses; (7) whether the debtor has provided accurate and complete information on his or her statements and schedules; and (8) whether the debtor has acted in good faith. *In re Stewart*, 175 F.3d 796, 809 (10th Cir. 1999) (citing *In re Krohn,* 886 F.2d 123, 126-127 (6th Cir. 1989) and *In re Green*, 934 F.2d 568, 572-73 (4th Cir. 1991)). Ability to pay is the primary factor. *Id.*

Courts construing § 707(b)(3) have uniformly held that satisfaction of § 707(b)(2), either because the presumption of abuse does not arise, or because the debtors have rebutted the presumption, does not preclude the trustee from seeking to dismiss a debtor's bankruptcy case for abuse under § 707(b)(3). *See, e.g., In re Zaporski,* 366 B.R. 758, 770 (Bankr.E.D.Mich.

3

2007)(finding that § 707(b)(2)(A) "offers no safe harbor to those debtors with respect to whom this statutory presumption does not arise" so that § 707(b)(3) permits a court to dismiss a case even absent the statutory presumption); *dePellegrini,* 365 B.R. at 833 ("[t]he Debtor's contention that he 'passed' the means test of 707(b)(2) is not a defense to a § 707(b)(3) motion to dismiss."). Courts also generally agree that the debtor's "ability to pay" must be considered under the totality of the circumstances prong of § 707(b)(3). *See, e.g., Zaporski,* 366 B.R. at 771 (finding that review under the totality of circumstances prong of § 707(b)(3) that the court "will properly consider, as one of those circumstances, his ability to repay creditors. . . "); *Schoen,* 2007 WL 643295 at *3 (concluding that "the Debtor's ability to pay is part of the 'totality of the circumstances' that must be considered in order to determine whether his case is an 'abuse' of Chapter 7."); *Pfiefer,* 365 B.R. at 192-93 ("[A] debtor's ability to pay is still an important factor under § 707(b)(3), notwithstanding the means test of § 707(b)(2).")(citation omitted); *In re Sorrell,* 350 B.R. 167, 188 (Bankr.S.D.Ohio 2007) (holding that "the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted."). The focus of the inquiry is thus narrowed to how the Court should calculate the Debtors' ability to pay within the context of a motion to dismiss for abuse under § 707(b)(3).

The parties stipulate that the Debtors' income is above the median income for a family of the same size in this district. (*See* Stipulation, ¶10). In calculating the required monthly plan payment under Chapter 13 for above-median income debtors, expenses are restricted to those amounts allowed under § 707(b)(2)(A) and (B). *See* 11 U.S.C. § 1325(b)(3) ("Amounts

4

reasonably necessary to be expended under paragraph (2) *shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . .*")(emphasis added). For this reason, Debtors contend that they have satisfied the test for abuse under § 707(b)(3) because their income and expenses as calculated under the means test on Official Form B22C reflect minimal monthly net disposable income which they would be required to contribute under a Chapter 13 plan.

*Pfiefer* appears to support the Debtors' position. In *Pfiefer,* the United States Trustee moved to dismiss the debtors' case under § 707(b)(3), alleging that the debtors had the ability to pay a substantial portion of their unsecured debts through a Chapter 13 plan. 365 B.R. at 188-89. The bankruptcy court found that, notwithstanding the means test of § 707(b)(2), "a debtor's ability to pay is still an important factor under § 707(b)(3).") *Pfiefer,* 365 B.R. at 192-93. The court then considered the debtors' ability to pay by applying the modified disposable income test for above-median income debtors, and found that the debtors had no ability to pay despite the fact that their schedules I and J indicated that the debtors could make a plan payment of $500.00 per month. *Id.* at 195.

In *In re Henebury,* 361 B.R. 595 (Bankr.S.D.Fla. 2007), the bankruptcy court also acknowledged that § 1325(b)(3) directs above median income debtors to calculate their expense deductions based on the formula found in § 707(b)(2)(A) and (B), and began its analysis under § 707(b)(3) based on the amounts reflected in the debtors' means test calculation. *Henebury,* 361 B.R. at 611 -12. However, *Henebury* determined that the means test calculation is only the starting point from which "adjustments may be necessary based on the Debtors' actual financial circumstances." *Id.* at 612. This is because under the totality of circumstances test for abuse, the

5

court must be concerned with the debtor's actual ability to repay, such that "post petition events are relevant . . . and properly considered[.]" *Id.* Thus, in analyzing whether proceeding under chapter 7 constituted an abuse under § 707(b)(3), the court took into account income from the teaching position one of the debtor's started just four days after the petition date. *Id.* at 613.

In *Zaporski,* the bankruptcy court agreed with those courts who conclude that the totality of circumstances prong under 707(b)(3) requires the court to consider the debtor's financial situation, including his or her ability to pay, "even where the debtor's petition is not filed in bad faith and even where the statutory presumption of abuse has not arisen under § 707(b)(2)(A)[.]" *Zaporski,* 366 B.R. at 771. Zaporski was an above-median income debtor, and while the bankruptcy court considered the deductions the debtor would be entitled to take under the means test for contributions or deductions to qualified retirement plans and repayments of loans from retirement plans, the testimony revealed that the balance on the debtor's 401(k) loans would be paid in full during the life of a plan, freeing up an additional $320.67 per month which would be available to pay unsecured creditors. *Id.* Thus, the *Zaporski* court took into account the changes in future expenses in finding that the debtor had an ability to repay.

This Court agrees with the approach taken in *Henebury* and *Zaporski*, and finds that the "totality of the circumstances" standard is not satisfied simply by demonstrating that a debtor has insufficient ability to pay under the means test. This Court previously determined in *In re Edmondson,* 363 B.R. 212 (Bankr.D.N.M. 2007) that "projected disposable income" for an above-median income debtor is to be determined by applying the expenses as allowed under Official Form B22C to the debtor's actual income as reported on Schedule I. *Edmondson,* 363 B.R. at 219-20. Thus, under *Edmondson,* a debtor is entitled to deduct the IRS standard expense

6

for housing costs even if the debtor's actual expense in that category is lower. *Id.* at 219. However, even under *Edmondson,* it is appropriate to require a debtor to increase plan payments by an amount equal to the expenses he will no longer incur post-petition. *See* Harold and Bernadette Edmondson, Case No. 13-06-11422 MA; Order On Confirmation of Debtors' Chapter 13 Plan (Docket # 55) (finding that the Debtors could not deduct expenses associated with rental property the Debtors intended to surrender in computing their projected disposable income). This approach is relevant to a 707(b)(3) analysis because the Court must consider the payments a debtor would be able to make under a hypothetical Chapter 13 plan.

It, therefore, follows, that the debtor's financial situation as of the date of the filing of the petition, as well as post-petition changes to a debtor's income and expenses are relevant to the determination of whether a debtor's Chapter 7 petition should be dismissed under § 707(b)(3). *See Henebury,* 361 B.R. at 612 (finding that post-petition events are relevant and properly considered in a 707(b)(3) analysis); *In re Oot,* 368 B.R. 662, 670 (Bankr.N.D.Ohio 2007) (finding that the starting point in any 707(b) analysis begins with the conditions as they existed when the petition was filed, but post-petition events may also be considered). *See also, In re Hartwick,* 359 B.R. 16, 22 (Bankr.D.N.H. 2007 (holding that means test must be applied to the financial circumstances of the debtor as of the petition date, but stating that under § 707(b)(3)'s totality of circumstances test, the court may consider the debtor's post-petition financial circumstances). This is because, under the totality of circumstances test, the Court should consider the debtor's reasons for filing bankruptcy as well as the debtor's ability to pay creditors in a hypothetical Chapter 13. *See Schoen,* at *4 (finding that the totality of circumstances under § 707(b)(3) "include not only his present and projected ability to pay, but also his unemployment

7

history, the reduction of his expenses, and how much money would actually be paid in a Chapter 13 case to his general unsecured creditors . . . ").

The Court will now examine the facts of this case in light of the standards established above.   The parties stipulate that the Debtors' unsecured debt is primarily consumer debt, and that their total unsecured debt is $97,927.00, including non-dischargeable student loans in the amount of $53,664.00. (*See* Stipulation No. 7).  The parties also stipulated that the Debtors' monthly post-petition gross income, based on their 2006-2007 teaching contracts, is $9,718.75. (*See* Artesia Public School Contracts for Billy Mondragon and Joan Mondragon, UST Exhibits 3 and 4; and September 15, 2006 payment advices for Billy Mondragon and Joan Mondragon, UST Exhibits 5 and 6).[5]  Although the Debtors' payment advices reflect larger deductions from their gross income, the parties stipulated that post-petition monthly deductions, including payroll tax deductions, mandatory retirement deductions, and other payroll deductions for health, life and disability insurance, total $3,268.46. (*See* Stipulation, ¶ 22).  Thus, based on these stipulations, the Court will use $6,450.29 ($9,718.75 - $3,268.46) as the Debtors' combined net monthly income for purposes of determining their ability to pay.[6]

---

[5]Billy Mondragon's September 15, 2006 payment advice reflects a double payment of the $78.75 Fall Sport Coordinator amount reflected on his 2006-2007 teaching contract; thus the September 15, 2006 payment advice reflects gross monthly income of $5,480.50 rather than $5,401.75.  The Court also notes that the Debtors' Response and Objection to Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(3) reports a gross income figure of $9,255.01 at ¶ 12.  This figure does not match the figures contained in the Debtors' 2006-2007 teaching contracts nor the figures on their September 15, 2006 payment advices.  Presumably, Debtors reached the gross income figure by subtracting $1,524.49, representing Mr. Mondragon's reduction in income from the loss of his head coaching position, from the Debtors' pre-petition gross income figure based on their 2005-2006 teaching contracts.

[6]The Court notes that the Debtor's Schedule I, which has not been amended, reflects net monthly income in the amount of $6,714.64, as does the Debtors' Amended Schedule J, Line 20.

8

Based on Form B22C, the Debtors are entitled to take the following standard and actual expense deductions:

| Line19 | National Standards: Food, clothing, household supplied, personal care and miscellaneous | $1,546.00 |
|---|---|---|
| Line 20A | Local Standards; housing and utilities; non-mortgage expenses | $383.00 |
| Line 22 | Local Standards: vehicle operation/public transportation expense | $420.00 |
| Line 23 | Local Standards: transportation ownership/lease expense | $122.21 |
| Line 31 | Other Necessary Expenses: health care | $268.00 |
| Line 32 | Other Necessary Expenses: telecommunication services | $537.82 |
| Line 37 | Home energy costs in excess of the allowance specified by the IRS Local Standards | $97.82 |
| Line 40 | Continued charitable contributions | $30.00 |
| Line 42 | Future payments on secured claims | Mortgage: $2,056.00<br>Car payments:<br>  Chev. Cobalt: $392.00<br>  Ford Mustang: $388.00<br>  Pontiac G6: $392.00<br>Dell Computer: $41.67<br>TOTAL: $3,269.67 |
| | TOTAL B22C Allowed Expenses: | $6,674.52 |

---

(*See* Docket #1 and Docket # 14).

Expense deductions found on Form B22C on Line 25 (Other Necessary Expenses: taxes); Line 26 (Other Necessary Expenses: mandatory payroll deductions); and Line 34 (Health Insurance, Disability Insurance and Health Savings Account Expenses), have already been taken into account in the stipulated payroll deductions for these items used by the Court in calculating a starting net income figure. Such expenses will not, therefore, be deducted again in calculating the Debtors' ability to pay. However, the Debtors report on Schedule J a $100.00 per month expense for taxes. The Court presumes that this amount was not included in the parties' stipulation of payroll deductions, and the United States Trustee did not object to this expense in its calculation of reasonable expenses set forth on Exhibit 8. The Court will, therefore, add $100.00 to the Debtors' monthly expenses.

In addition, certain expense deductions from Form B22C as reported above must be adjusted to take into account certain expenses that the Debtors will no longer incur post-petition. First, the parties have stipulated that the Debtors have reduced their average monthly cell phone bill from $512.82[7] to $174.15. (*See* Stipulation ¶ 25). Thus, total expenses must be reduced by $338.67. Similarly, the Debtors paid off an $85.00 per month expense for orthodontic bills (part of Line 31) in April 2006, and the secured monthly debt payments on their Dell computers in the amount of $41.67 will be paid in full in 2007 (reported on Line 42.e.). (*See* Stipulation ¶ 26). The expenses must, therefore, be reduced by $126.67 ($41.67 + $85.00). Finally, the Debtors' middle son, who is now twenty-two years old, will have graduated from college in May

---

[7]Line 32 of Form B22C includes cell phone, internet, and other telecommunication charges, totaling $537.82, of this amount $25.00 is attributable to internet service fee. (*See* Amended Schedule J, Docket # 14).

of 2007. The United States Trustee points out, and the Court agrees, that Debtors should not be allowed to deduct the secured debt and car insurance payments associated with their adult son's vehicle. Thus, the expenses must be reduced by $392.00, the amount of the secured monthly debt payment on the Chevrolet Cobalt[8] (Line 42.b), and by $124.00 representing the son's portion of the total monthly car insurance expense. (*See* United States Trustee's Exhibit 8). These additional reductions total $981.34.[9]  Thus, the Debtor's total allowed monthly expenses are as follows:

```
         $6,674.52    Form B22C
      + $  100.00     Additional Tax expense/adjustment
         $6,774.52
LESS    $  981.34   = $5,793.18
```

Debtors' net monthly disposable income which could be contributed to a Chapter 13 plan, after deducting expenses based on Form B22C, as appropriately adjusted, is as follows: $6,450.29 (net income) - $5793.18 (adjusted allowed expenses) = $657.18.   Debtors have a stable and regular source of income, and their total debts to not exceed the debt limitation for debtors proceeding under Chapter 13. *See* 11 U.S.C. § 109(e).  The Debtors, are, therefore, eligible to proceed under Chapter 13.

Over sixty months[10], Debtors could contribute $39,430.80 to a Chapter 13 plan.  The

---

[8] The parties stipulate that their middle son drives the 2006 Chevrolet Cobalt. (*See* Stipulation, ¶ 29).

[9] $126.67 (orthodonture and computer) + $338.67 (cell phone) + $124.00 (car insurance) + $392.00 (car payment) = $981.34

[10] Because Debtors' income is above the median income for a family of the same size in this district, because the total plan contribution will not pay all creditors in full, they would be required to commit to a five-year plan. *See* 11 U.S.C. § 1325(b)(4) (defining "applicable commitment period").

11

parties stipulate that the Debtors have a scheduled priority tax liability of $1,780.00 for the tax year 2005, and that they owed $2,652.00 for the 2006 tax year, which is most likely attributable to the Debtors' under withholding of taxes from their paychecks. (*See* Stipulation No 44, and 45). After adjusting further for the estimated administrative expenses in Chapter 13 (the Chapter 13 Trustee's 10% commission on plan payments in the estimated amount of $3,943.08)[11], as well as the Debtors' priority tax liability in the amount of $1,780.00, the amount available for distribution to unsecured creditors would be approximately $33,077.72, yielding an estimated 34% return to unsecured creditors.[12]

In *Mestemaker,* the bankruptcy court found that the "abuse threshold" contained in § 707(b)(2)(A)(I)[13] is helpful to determine whether a case should be dismissed for abuse under § 707(b)(3). 359 B.R. at 857. *Mestemaker* finds support for this position from Judge Eugene Wedoff's article, *Judicial Discretion to Find Abuse under § 707(b)(3),* 25 Am.Bankr.Inst. J., 1 (April, 2005), which finds that "[t]he abuse threshold set out in § 707(b)(2)(A)(I) is irrebuttable."

---

[11]*See* 11 U.S.C. § 707(b)(2)(A)(ii)(III) (providing that expenses "may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected pan payments . . .").

[12]$33,077.72 ÷ $97,927.00 = .344. Even if the Court were to reduce the estimated total plan contribution by the 2006 tax liability (which the Court cannot tell based on the Stipulation whether this amount remains outstanding and whether it must be treated as a priority tax claim) in the amount of $2,652.00, the estimated return to unsecured creditors is 31%.

[13]That section provides, in relevant part, that a presumption of abuse arises if the debtor's current monthly income reduced by allowed expenses and multiplied by 60 is not less than the lesser of --
        (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
        (II) $10,000.
11 U.S.C. § 707(b)(2)(A)(i)(I) and (II).

Wedoff Article, p. 52. Thus, if debtors' disposable monthly income is more than $166.00 (10,000 ÷ 60), or at least $100.00 ($6,000 ÷ 60) sufficient to pay 25% of their non-priority unsecured debt in a five-year plan, it "is always an abuse requiring a denial of chapter 7 relief." Wedoff Article, p. 52. The court in *Mestemaker* granted the trustee's motion to dismiss under § 707(b)(3), where the debtor's ability to pay exceeded the abuse threshold contained in § 707(b)(2)(A)(I), but refused to hold that the "abuse threshold" is determinative under § 707(b)(3). *Mestemaker,* 359 B.R. at 858. *See also, In re Pennington,* 348 B.R. 647, 651-652 (Bankr.D.Del. 2006) (concluding that granting chapter 7 relief would constitute an abuse where debtor could repay 42% of his unsecured debt in a three-year plan and 69% of his unsecured debt in a five-year plan, which is significantly above the 25% threshold for presumption of abuse).

This Court agrees with *Mestemaker* in that, under the totality of circumstances prong of § 707(b)(3), a debtor's ability to pay 25% of their unsecured non-priority expenses is not *per se* abuse under § 707(b)(3). 359 B.R. at 858. However, given that a debtor's ability to pay is the primary factor even under pre-BAPCPA "substantial abuse" cases, the Court finds that a debtor's ability to repay 25% or more of his or her unsecured non-priority debts in a Chapter 13 plan is persuasive evidence that allowing the debtor to proceed under Chapter 7 would constitute an abuse. In this case, while the parties have stipulated that the Debtors filed their petition in good faith, and while there is no indication that the Debtors did not completely and accurately complete their statements and schedules, there no indication of the type of sudden calamity or illness that would prevent the Debtors from proceeding under Chapter 13. Mr. Mondragon was forced to resign his head coaching position, but after considering teaching opportunities in other districts, the Debtors have determined that they can maximize their income by remaining with

13

the Artesia school district. Indeed, even with his reduced income, the Debtors' income is well above the median-income for a family of the same size in this district.[14] They have taken steps to reduce some of their expenses, such as their monthly cell phone expense, yet they continue to pay for some of the costs attributable to their adult children. More than one-half of their unsecured debt is for a student loan, which would not be discharged in a Chapter 7 proceeding. *See* 11 U.S.C. § 523(a)(8). Given their apparent ability to repay a substantial portion of their unsecured debts in a Chapter 13 proceeding, the Court finds that proceeding under Chapter 7 constitutes an abuse under the totality of the circumstances prong of § 707(b)(3). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law entered pursuant to Rule 7052, Fed.R.Civ.P. An order which grants the Motion to Dismiss but permits the Debtors time within which to convert the case will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Clarke C. Coll
Attorney for Debtors
PO Box 550
Roswell, NM 88202-0550

Alice Nystel Page
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103

---

[14] The parties stipulated to a family size of four persons, yet as of the date of the final hearing on the Motion to Dismiss, the Debtors' middle son had graduated from college, presumably reducing the household size to three.